IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JASON ALEXANDER, on behalf of himself
and others similarly situated                                                    PLAINTIFF

V.                                      CASE NO. 3:19-CV-3007

ABSOLUTE RESOLUTIONS CORPORATION;
MARK NAIMAN; LLOYD & MCDANIEL, PLC;
and W. ANDERSON WOODFORD                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court are a Motion to Dismiss (Doc. 9) and Brief in Support (Doc. 10) filed by Defendants Absolute Resolutions Corporation ("ARC") and Mark Naiman, a Response in Opposition (Doc. 13) filed by Plaintiff Jason Alexander, and a Reply (Doc. 16) filed by ARC and Mr. Naiman. For the reasons given below, the Motion is **DENIED**.

### I. BACKGROUND

In 2013, Mr. Alexander entered into a retail installment contract and security agreement to finance his purchase of jewelry from Harris Jewelry. At some point, this debt was assigned from Harris Jewelry to an entity called Consumer Adjustment Corp., USA, and then to ARC. On February 18, 2018, ARC filed a civil lawsuit against Mr. Alexander in the Circuit Court of Baxter County, Arkansas, alleging that Mr. Alexander had defaulted on his debt, and asking for judgment against him in the amount of $1,077.67 plus interest. ARC was initially represented in that case by W. Anderson Woodford, an attorney for the law firm of Lloyd & McDaniel, PLC.

1

On July 7, 2018, Mr. Alexander filed a motion for summary judgment in the Baxter County lawsuit, arguing that ARC had no authority to file that lawsuit because it had not obtained a license from the State Board of Collection Agencies ("SBCA") to act as a collection agency in the state of Arkansas, as required by Ark. Code Ann. § 17-24-301. Five days later, Mr. Woodford and his co-counsel in that case moved to withdraw from their representation of ARC. That same day, ARC mailed an application for a collection agency license to the SBCA, along with a $10,000 check for the civil penalty that Ark. Code Ann. § 17-24-103(a)(3)(A)[1] imposes on collection agencies who wish for their prior unlicensed collection activities to be considered retroactively licensed by the SBCA. One week later, ARC was provided a collection agency license, retroactively effective from August 6, 2015 to the present day. A month later, new counsel entered their appearance for ARC in the Baxter County case and filed a response to Mr. Alexander's motion for summary judgment, arguing that the absence of a collection agency license is not a defense under Arkansas law against collection activities, and that in any event, the retroactive nature of ARC's recently-obtained license mooted the grounds for Mr. Alexander's motion. That summary judgment motion is still awaiting decision as of today.

Meanwhile, on January 25, 2019, Mr. Alexander filed a class-action Complaint against ARC, Mr. Woodford, Lloyd & McDaniel, and ARC's sole member and CEO, Mark Naiman, here in the United States District Court for the Western District of Arkansas. Mr. Alexander's Complaint brings one count against all of these defendants, alleging that they violated the *federal* Fair Debt Collection Practices Act ("FDCPA") by causing the Baxter

---

[1] This statutory framework will be discussed more extensively in Section III of this Opinion, *infra*.

County lawsuit to be filed against him before ARC had acquired a collection agency license from the SBCA. He seeks to represent a class of all persons in Arkansas who, within the year prior to the filing of his class-action Complaint, were served with a debt-collection complaint identifying ARC as the plaintiff and Lloyd & McDaniel or Mr. Woodford as ARC's attorneys. ARC and Mr. Naiman have filed a Motion to Dismiss Mr. Alexander's Complaint under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.[2] Mr. Alexander has responded, and ARC and Mr. Naiman have replied. On April 29, 2019, the Court heard oral argument on the Motion, which is now ripe for decision. The Court will explain its decision below, after reciting the legal standard that governs Rule 12(b)(6) motions to dismiss.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must provide "a short and plain statement of the claim that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of a complaint's factual allegations as true,

---

[2] Mr. Woodford and Lloyd & McDaniel have not filed any motion to dismiss of their own. Instead, they filed an Answer (Doc. 17), and then an Amended Answer (Doc. 18), both of which contain opening paragraphs asserting that "they adopt the arguments of [ARC] and Mark Naiman as stated in their Motion to Dismiss and Brief in Support." *See* Doc. 17, ¶¶ 1–4; Doc. 18, ¶¶ 1–4. The Motion to Dismiss and Brief in Support filed by ARC and Mr. Naiman do not contain any arguments that apply uniquely to Mr. Woodford or Lloyd & McDaniel. Pleadings are not motions, *see* Fed. R. Civ. P. 7, and our Local Rules require motions and supporting briefs to be filed as separate documents, *see* Local Rule 7.2(a). So this Court does not understand the opening paragraphs of Mr. Woodford's and Lloyd & McDaniel's Amended Answer to require any ruling from this Court apart from its ruling on ARC's and Mr. Naiman's Motion to Dismiss.

and construe them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition to the complaint's allegations, the Court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

### III. DISCUSSION

As should be apparent from the discussion in Section I, *supra*, this case revolves around the interaction between Arkansas and federal law on debt collection. So before diving into any particular points raised by the parties in their briefs, this Opinion will generally discuss these state and federal statutory frameworks.

The Arkansas Code states that:

Unless licensed by the [SBCA] under this subchapter it is unlawful to:

(1) Engage in the collection of delinquent accounts, bills, or other forms of indebtedness;

(2) Use a fictitious name or any name other than their own in the collection of their own accounts receivable;

(3) Solicit claims for collection; or

(4) Purchase and attempt to collect delinquent accounts or bills.

Ark. Code Ann. § 17-24-301. Elsewhere, the Arkansas Code defines "collection agency" as "any person, partnership, corporation, association, limited liability corporation, or firm which" engages in these activities.[3] *See* Ark. Code Ann. § 17-24-101. Collection agencies who engage in these activities without first obtaining a license to do so from the SBCA are subject to statutory penalties. Specifically, the Arkansas Code states that "[a] collection agency that engages in the business activities of a collection agency without a license issued under this chapter may be fined not less than fifty dollars ($50.00) nor more than five hundred dollars ($500)." Ark. Code Ann. § 17-24-103(a)(1).

This penalty is stiffer than it may appear at first glance, because "[e]ach day of a violation of this chapter is *a separate offense*." Ark. Code Ann. § 17-24-103(a)(2) (emphasis added). But there's an escape hatch of sorts, by which a violator may emerge bruised but not destroyed: "If a collection agency participates in collection activities without a license, the collection agency may pay a civil penalty to the [SBCA] of ten

---

[3] There is one caveat, which is that with respect to the first prong (regarding delinquent accounts), "collection agencies" are defined as engaging in the collection of such accounts etc. that are "owed or due or asserted to be owed or due *to another.*" *See* Ark. Code Ann. § 17-24-101 (emphasis added).

5

thousand dollars ($10,000) in order to be considered retroactively licensed under this chapter by the board." Ark. Code Ann. § 17-24-103(a)(3)(A). Importantly, "retroactively licensed" is defined here as going all the way back to "the date that the collection agency first became subject to licensure under this chapter," see Ark. Code Ann. § 17-24-103(a)(3)(B)—*i.e.*, the date when the collection agency first began engaging in any collection activities at all within the state of Arkansas. The practical effect of all this is that a collection agency who has engaged in unlicensed collection activities within the state of Arkansas for long enough to have a penal exposure far in excess of $10,000 nevertheless has the option of capping its penalty for these violations of Arkansas law at $10,000 if it wishes.

As mentioned above, Mr. Alexander's claim in this case is not brought under state law; it is brought under the federal FDCPA—specifically, under 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1). Those statutes provide, in relevant part, that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. *Without limiting the general application of the foregoing*, the following conduct is a violation of this section:
>
> * * *
>
> (2) The false representation of—
>
> (A) the character, amount, or *legal status* of any debt;
>
> * * *
>
> (5) The threat to take any action *that cannot legally be taken* or that is not intended to be taken[;] or
>
> * * *

> (10) The use of any *false representation* or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer[,]

see 15 U.S.C. § 1692e (emphasis added), and that:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. *Without limiting the general application of the foregoing*, the following conduct is a violation of this section:
>
> > (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt *or permitted by law*[,]

see 15 U.S.C. § 1692f (emphasis added). (In the foregoing passages, the Court has italicized those portions on which it understands Mr. Alexander's claims to be based in this lawsuit.)

Several points should be made here about the interaction between these two bodies of law. Importantly, the FDCPA is not coterminous with state law. *See Haney v. Portfolio Recovery Assocs., L.L.C.*, 895 F.3d 974, 988 (8th Cir. 2016). It does not exist simply to provide a federal remedy for every infraction of state debt-collection law. *See Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004). But of equal importance is the fact that state law cannot eliminate a federal cause of action that arises under the FDCPA. Indeed, the FDCPA preempts state law to the extent the latter is inconsistent with, and provides debtors less protection than, the former. *See* 15 U.S.C. § 1692n. However, notwithstanding these separate spheres of authority, state law can sometimes be highly relevant to the question of whether a violation of the FDCPA has occurred. For example, if a debt collector threatens to bring a lawsuit to collect a debt under the law of a state that expressly prohibits it from doing so, then that may constitute

a "threat to take any action that cannot legally be taken" under 15 U.S.C. § 1692e(5). *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1197–98 (11th Cir. 2010).

With those preliminary observations out of the way, a fruitful examination may now be had of the specific arguments raised by the parties in their briefs on the Motion to Dismiss. ARC and Mr. Naiman begin their argument for dismissal by pointing to the following language from the Arkansas Code, regarding the SBCA's authority to impose financial penalties for unlicensed collection activities:

> (b) (3) The remedies in the form of civil penalties provided in this section for failing to obtain a license issued under this chapter *shall be the only consequence of and remedy for* the failure of a collection agency to obtain a license when required under this chapter.
>
> (c) The [SBCA] has *exclusive jurisdiction* over the rights and remedies [f]or a violation of the rules under this chapter.

Ark. Code Ann. § 17-24-103 (emphasis added). From this, the defendants argue that under Arkansas law Mr. Alexander has no private right of action. But this mischaracterizes the nature of the action that Mr. Alexander has brought. He is not bringing a claim under Arkansas law; he is bringing a claim under *federal* law. As described above, federal law prohibits debt collectors from attempting to collect debts through unlawful means; and Mr. Alexander contends that at the time the defendants filed their lawsuit against him in an Arkansas court, they were expressly prohibited from doing so under Arkansas law. So Arkansas law is relevant to evaluating Mr. Alexander's federal claim; but it is nevertheless a *federal* cause of action. And as already noted, the FDCPA preempts state laws that would restrict the scope of its application.

The defendants next argue that no matter how illegal under Arkansas law their lawsuit against Mr. Alexander may have been at the time of its filing, Mr. Alexander's

8

claim has subsequently been mooted by the retroactively effective collection license that ARC obtained from the SBCA. But the Court believes this approach stretches the statute's "retroactively licensed" language too far, by taking insufficient account of the other statutory language that surrounds it. As described above, Arkansas's statutory scheme gives the SBCA authority to impose civil penalties on collection agencies that conduct unlicensed collection activities within the state of Arkansas which, if carried out for long enough, can far exceed the sum of $10,000; but that same scheme allows violators to opt instead for a one-time "civil *penalty*" of $10,000 in exchange for being "*considered* retroactively licensed . . . *by the board*." Ark. Code Ann. § 17-24-103(a)(3)(A) (emphasis added). The Court does not interpret this language to be saying that the illegality of the original violation can somehow be retroactively erased; after all, under the statute's own explicit language, the violator pays a $10,000 "*penalty*" for an "*unlawful*" action. Rather, the Court interprets this language as simply restricting the magnitude of the penalty that the SBCA is authorized to impose on violators.

The defendants also raise arguments about some—but not all—specific provisions of the federal FDCPA under which Mr. Alexander brought his claims. Specifically, they contend that his Complaint fails to state claims under 15 U.S.C §§ 1692e(5), 1692e(10) and 1692f.

With respect to § 1692e(5), the defendants argue that the plain language of that statute prohibits "[t]he *threat* to take any action that cannot legally be taken," but not the actual undertaking of such an illegal action in the absence of any threat to do so. There are some courts that have interpreted this statutory subsection in that way, *see, e.g.*, Vanhuss v. Kohn Law Firm S.C., 127 F. Supp. 3d 980, 987–88 (W.D. Wis. 2015)

(collecting cases), and there are other courts that have not, *see, e.g., Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 536 (6th Cir. 2014) ("In light of the Act's overarching purpose to prevent false, deceptive, or misleading representations, whether a filing's metaphysical description is more an 'attempt' or more a 'threat' is essentially wordplay." (some internal quotation marks and alterations omitted)); *cf. Poirier v. Alco Collections, Inc.*, 107 F.3d 347 (5th Cir. 1997) (conflating "action" with "threat" for purposes of § 1692e(5)). This Court is unaware of any binding Eighth Circuit authority on this particular matter of statutory interpretation.

On the one hand, reading this subsection in such a hyper-textualist manner can initially seem rather absurd and contrary to the FDCPA's purpose: *why* would the FDCPA prohibit threats to undertake illegal acts without prohibiting the actual undertaking of those same acts? But it makes more sense when one scrolls back up to the beginning of § 1692e, where the list of prohibited conduct is preceded by the following language: "A debt collector may not use *any* false, deceptive, or misleading representation or means in connection with the collection of any debt. *Without limiting the general application of the foregoing*, the following conduct is a violation of this section . . . ." 15 U.S.C. § 1692e (emphasis added). Once it is remembered that § 1692e(5)'s prohibition on threats of illegal action is simply but one example from a non-exhaustive list of potential types of deceptive debt-collection practices, it seems apparent that § 1692e's *general* prohibition on false, deceptive, or misleading debt-collection practices might apply to the actual undertaking of illegal actions, and that § 1692e(5) is simply there to clarify for the reader that it is *also* prohibited even to *threaten* such undertakings without actually following through on those threats.

10

Significantly, the defendants never explicitly argue that Mr. Alexander has failed to allege any violation of § 1692e's general prohibition. Instead, they simply focus on *some* of the subsections that Mr. Alexander has cited in his Complaint. For this reason alone, denial of their Motion is warranted, at least as to ARC, and the Court sees no need to reach the defendants' arguments at this time about §§ 1692e(10) and 1692f. As the defendants themselves repeatedly observe, all of Mr. Alexander's theories of recovery under the FDCPA are premised on the same underlying alleged conduct: the filing of the Baxter County lawsuit prior to obtaining a collection agency license from the SBCA. Regardless of whether recovery may be obtained under any particular exemplary subsection of the FDCPA, Mr. Alexander has at the very least pleaded sufficient facts to allege a violation of the FDCPA's general prohibition in § 1692e; and the scope of discovery will not be impacted by how many, if any, exemplary subsections in the FDCPA ultimately apply, given their identical factual premise in this case. Whether the defendants' alleged misrepresentations in bringing the Baxter County lawsuit were "material" under the circumstances, *see Hill v. Accounts Receivable Servs., LLC*, 888 F.3d 343, 345–46 (8th Cir. 2018), or whether their conduct was "unfair or unconscionable" under the circumstances, *see* 15 U.S.C. § 1692f, are questions better left for resolution on summary judgment (or trial) with the benefit of the factual context that is provided by a well-developed evidentiary record.[4]

---

[4] Among the issues raised by the defendants that the Court need not reach at this time, is whether recovery may be had under § 1692f for conduct that also violates § 1692e. *See, e.g., Fox v. ProCollect, Inc.*, 2019 WL 386159, at *8 (E.D. Ark. Jan. 30, 2019). Even if the Court were ultimately to conclude at summary judgment or trial that such dual recovery is impermissible, we are only at the pleading stage right now. "A party may state as many separate claims" in a complaint "as it has, regardless of consistency." *See* Fed. R. Civ. P. 8(d)(3). Furthermore, "[a] party may set out 2 or more statements of a claim

But before concluding this Opinion and Order, the Court must address one last argument that is unique to Mr. Naiman.[5] The defendants cite to the Seventh Circuit cases of *White v. Goodman*, 200 F.3d 1016 (7th Cir. 2000) and *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057 (7th Cir. 2000), for the proposition that the FDCPA does not contemplate personal liability for officers and shareholders. Those cases held that "the extent of control exercised by an officer or shareholder is irrelevant to determining his liability under the FDCPA," *see Pettit*, 211 F.3d at 1059 (citing *White*, 200 F.3d at 1019), and that the FDCPA "does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced," *see id.* The Seventh Circuit's reasoning here is essentially that "such individuals do not become 'debt collectors' simply by working for or owning stock in debt collection companies." *See id.* Accordingly, Mr. Naiman argues that Mr. Alexander's Complaint fails to state a claim against him individually, because it simply alleges that he was ARC's sole member and CEO.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the

---

... alternatively or hypothetically, either in a single count . . . or in separate ones," and "[i]f a party makes alternative statements, the pleading is sufficient *if any one of them is sufficient.*" *See* Fed. R. Civ. P. 8(d)(2) (emphasis added).

[5] The defendants also briefly raise an argument about the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k. As the Baxter County lawsuit was filed less than one year before the filing of the instant action, and given that Mr. Alexander seeks to represent a class of people who were sued within the year prior to the instant lawsuit's filing, the Court does not understand Mr. Alexander's Complaint to be bringing any claims that are outside the FDCPA's statute of limitations.

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." See 15 U.S.C. § 1692a(6). This definition does not appear, by its own terms, to entirely exclude officers, employees, or principals of debt collectors from themselves also being debt collectors. Other Circuits have adopted more expansive readings than the Seventh Circuit's. For example, the Eleventh Circuit has held that when the Federal Trade Commission ("FTC") brings an enforcement action against a corporation's owner under the FDCPA, that owner may be personally liable if the FTC shows that "the individual knew of the deceptive practices and either participated directly in those practices or had the authority to control them." *FTC v. Primary Group, Inc.*, 713 F. App'x 805, 807 (11th Cir. 2017). Similarly, the Sixth Circuit has held in the context of a private enforcement action that "subjecting the sole member of an LLC to individual liability for violations of the FDCPA will require proof that the individual is a 'debt collector,' but does not require piercing of the corporate veil." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 437–38 (6th Cir. 2008).

This Court agrees with the Sixth Circuit in *Kistner*, and the multitude of district court cases from around the country that are cited therein, that whether someone is a "debt collector" within the meaning of the FDCPA depends on whether they independently satisfy the statute's definition of that term—not on formalities of employment or organizational structure. That is not to say that this Court *entirely* disagrees with the Seventh Circuit. This Court shares the Seventh Circuit's view that merely working for or owning stock in debt collection companies is not itself sufficient to satisfy that definition. But here, Mr. Alexander has alleged that Mr. Naiman is the sole member and CEO of

ARC—as well as of a chain of other related entities that would appear to engage in similar activities—and that ARC represented to the SBCA that Mr. Naiman is its only employee who collects or solicits accounts. At a minimum these allegations are sufficient to permit a reasonable inference that Mr. Naiman knew of, directly participated in, and had the authority to control, ARC's actions as described in Mr. Alexander's Complaint. Given this, since the Court has already ruled that the Complaint alleges sufficient facts to state a claim against ARC, it follows that it has also alleged sufficient facts to state a claim against Mr. Naiman. The actual amount of Mr. Naiman's knowledge, participation, and control over ARC's actions, and whether those are sufficient to meet the definition of "debt collector" under the FDCPA are more properly decided at summary judgment or trial.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Absolute Resolutions Corporation's and Mark Naiman's Motion to Dismiss (Doc. 9) is **DENIED**.

**IT IS SO ORDERED** on this １ST day of May, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE